431 So.2d 399 (1983)
STATE of Louisiana
v.
Antonio JAMES.
No. 82-KA-1230.
Supreme Court of Louisiana.
April 4, 1983.
Concurring in Part and Dissenting in Part May 18, 1983.
Rehearing Denied June 3, 1983.
*401 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., John Craft, David Batt, Mary Charlotte McMullan, Asst. Dist. Attys., for plaintiff-appellee.
Numa Bertel, Dwight Doskey, New Orleans, Orleans Indigent Defender Program, for defendant-appellant.
DENNIS, Justice.
The state's evidence indicates that on January 1, 1979, the defendant, Antonio James, approached seventy year old Henry Silver as Mr. Silver was getting out of his car in his neighborhood in New Orleans. The defendant placed a gun to Mr. Silver's head and demanded his money. When Mr. Silver shouted for help, defendant James placed the gun under Silver's right ear, cocked the hammer, and fired a shot into Mr. Silver's head. Defendant then rifled through Silver's pockets and removed his wallet containing thirty-five dollars. He drove away in a nearby waiting car. Mr. Silver died a few hours later at Charity Hospital.
The defendant was arrested on January 26, 1979 when he bungled another armed robbery attempt and was shot with his own gun. He was indicted for first degree murder. In December, 1981, a jury found him guilty as charged. After deliberation, the same jury unanimously recommended that the defendant be sentenced to death.
On appeal, the defendant filed nine assignments of error. Because we find no merit in these assignments, we affirm the defendant's conviction and sentence of death.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error, defendant asserts that the trial court erred in excusing prospective jurors who had reservations about the death penalty but were not unalterably opposed to it.
*402 The record reflects that fourteen prospective jurors of a venire of sixty-nine persons were excused for cause by the court after state challenges on the ground that they would not consider the death penalty under any circumstances during the sentencing phase of the proceedings. One of the excluded jurors expressed opposition to the death penalty only and declared himself capable of otherwise determining the defendant's guilt or innocence.
The defendant now claims that the exclusion of those jurors opposed to the death penalty prejudiced the remainder of the jury and requires a reversal.
Under Louisiana law, in a capital case, the trial court, upon the state's motion, must exclude for cause any juror who
has conscientious scruples against the infliction of capital punishment and makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt....
La.C.Cr.P. art. 798.
Nevertheless, under the United States Constitution, not every attitude against the death penalty may serve as grounds for excluding a prospective juror. In Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the United States Supreme Court held that the death penalty could not be imposed upon a defendant tried by a jury from which potential jurors who voiced a general objection to the death penalty were excluded. Recently, the High Court extended this reasoning to prohibit the state from excluding prospective jurors from service merely because they were unable to take an oath that the mandatory penalty of death or imprisonment for life would not "affect" their deliberations on any issue of fact. Adams v. Texas, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980).
The record reflects that in the instant case each juror excused because of his opposition to the death penalty stated emphatically that he or she could not vote to impose the ultimate penalty even in light of evidence which might be developed in the trial or in consideration of the law which would govern the case. Therefore, these jurors were properly excluded under Louisiana law. La.C.Cr.P. art. 798. Moreover, these prospective jurors were properly excluded under the Fourteenth Amendment, for no juror was excused merely because he had a general objection to the death penalty or because he could not swear that the possibility of the death penalty would not affect his deliberations in the case. See, Witherspoon v. Illinois, supra; Adams v. Texas, supra. Accordingly, the exclusion of the prospective jurors in the present case was proper.
Nevertheless, the defendant seeks a reversal arguing that the "death qualified" jury was in some way prejudiced against him. In Witherspoon, the United States Supreme Court refused to grant relief on the basis of this issue, stating that the data adduced by the petitioner were too tentative and fragmentary to justify a conclusion, either on the basis of the record in the case or as a matter of judicial notice, that the exclusion of jurors opposed to the capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. Witherspoon v. Illinois, 391 U.S. at 517, 88 S.Ct. at 1774. Similarly, this court has recently declined to hold upon only the defendant's mere contention that such a jury is more likely to vote to convict the defendant. State v. David, 425 So.2d 1241 fn. 1 (La. 1983).
The defendant concedes that he has no data to support his claim. Therefore, although the issue remains susceptible to argument based on new data in this court and, presumably, the High Court, we decline to reverse the defendant's conviction or sentence on mere speculation.
Accordingly, this assignment of error lacks merit.

*403 ASSIGNMENT OF ERROR NUMBER TWO
By this assignment of error, the defendant contends that the trial judge erroneously restricted the scope of voir dire examination on the jurors' assessment of accomplice testimony.
During voir dire, defense counsel attempted to inquire about the jurors' opinions in evaluating accomplice testimony. Specifically, the attorney for the defendant described in detail before the prospective jurors the fact that one of the witnesses would be a person accused of participating in the instant offense. He continued at some length regarding the weight to give an accomplice's testimony. The attorney then asked a prospective juror: "[h]ow would you go about in your mind scrutinizing testimony like that?" The state objected to this question on the grounds that the court's charge would be the legal criteria for evaluating testimony and the inquiry would go into what the jurors thought and into their opinions. The trial judge sustained the objection ruling that the defense counsel had asked the juror to commit himself to whether he would believe the testimony of an alleged accomplice in the case.
An accused in Louisiana is guaranteed the right to "full voir dire examination of prospective jurors...." La. Const. 1974, art. I, § 17; Cf. La.C.Cr.P. art. 786. In general, whether a particular question is essential to full voir dire is within the sound discretion of the trial judge. State v. Parker, 416 So.2d 545 (La.1982); State v. Robinson, 404 So.2d 907 (La.1981); La.C.Cr.P. art. 786. His rulings thereon will not be disturbed in the absence of a clear misuse of discretion. State v. Parker, supra. However, because the right to full voir dire examination has a constitutional basis, wide latitude should be given the defendant to test prospective jurors' competency and impartiality. Nevertheless, the purpose of voir dire examination is not to elicit jurors' opinions concerning particular evidence to be offered at trial. State v. Parker, supra; State v. Robinson, supra; State v. Murray, 375 So.2d 80 (La.1979).
Although we do not think that the defense counsel's question called for an opinion by a juror as to actual evidence to be presented at trial, we cannot say the trial court misused its discretion in disallowing the particular query. In the instant case, defense counsel was allowed wide latitude in questioning prospective jurors about accomplice testimony. The record suggests that defendant was able to conduct extensive voir dire so as to intelligently exercise his right to challenge prospective jurors for cause or peremptorily. The prohibited question was very introspective and would have called for a time-consuming examination of his thought process by each prospective juror. The disallowance of this single open-ended question did not prevent a full and effective voir dire in this case. Therefore, the trial judge did not clearly misuse the discretion afforded him by our law.
Accordingly, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
By this assignment of error the defendant argues that the trial court erred in denying the defense the opportunity to rehabilitate a prospective juror challenged for cause by the state.
Under our law, the erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law. La.C.Cr.P. art. 800. Because the instant offense was one punishable by death, the state was allowed twelve peremptory challenges, La.C.Cr.P. art. 799, and the record reflects that the state exercised only eleven of those challenges. Therefore, the defendant may not complain of the allegedly improper grant of the state's challenge for cause.
Accordingly, this assignment of error lacks merit.

*404 ASSIGNMENT OF ERROR NUMBER FOUR
By this assignment of error the defendant contends that the trial court erred when it denied a motion for a mistrial made after the prosecutor suggested that the defense was concealing evidence.
During cross-examination of Levon Price, the defendant's alleged accomplice and the state's principal witness, defense counsel attempted, presumably for impeachment purposes, to establish that Price had entered into a plea agreement in exchange for his testimony. Price claimed that he could not recall some of the details of his plea bargain. With further questioning, defense counsel attempted to establish the point in time at which Price had entered into the plea agreement. During this cross-examination, the state's attorney interjected that the plea bargain had been described by Price in a tape recorded statement and offered several times to play it before the jury. Out of the hearing of the jury, the defendant's counsel moved for a mistrial based on the prosecutor's remarks, which the trial court denied.
On appeal, the defendant contends that the comments of the prosecutor were so prejudicial to the defendant as to require a mistrial under article 771 of the Louisiana Code of Criminal Procedure.
Article 771 provides, in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770;
* * * * * *
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Under the facts of this case, we conclude that the trial court's denial of a mistrial was not reversible error. The record suggests that the defense counsel was able to impute bias or interest to the witness, Price, and so accomplish his intention of impeachment. Although the prosecutor's remarks certainly implied that Price's tape recorded statement contained something harmful to the defendant's case, it was never made clear exactly what that might be. Under these circumstances, we think an admonition by the trial judge for the jury to disregard the remarks would have been sufficient to remove any prejudice which could have been created against the defendant. In such cases, the trial judge is not required to grant a mistrial on defendant's motion because an admonition is sufficient to assure the defendant a fair trial. La.C.Cr.P. art. 771. See State v. Baldwin, 388 So.2d 664, 673-74 (La.1980).
Therefore, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER FIVE
By this assignment of error, the defendant argues that the trial court erred in its instruction to the jury that specific intent to kill could be inferred from the lack of provocation or slight provocation.
Specifically, the defendant objects to the following charge given by the trial judge:
Specific intent may be implied where there are no external signs of it but the mere fact of the killing itself. For instance, where there was no lawful reasons for it and the killing is without provocation or upon so slight a provocation as not to justify it. Further if an assault is made upon a person not with the intent to kill but with the intent of inflicting great bodily harm without provocation or justification and death is caused by the assault, it is murder. Also a specific intent to kill may be inferred if any deliberately cruel act was committed against one person by another. The intent *405 may be inferred from the circumstances.

* * * * * *
On at least two occasions a majority of this court has approved charges relative to specific intent which are virtually identical to the instruction in the instant case. See, State v. Davis, 411 So.2d 2 (La.1982); State v. Mattheson, 407 So.2d 1150 (La.1981).
Therefore, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER SIX
By this assignment of error, the defendant contends that the trial court erred when it refused to give six special jury instructions requested by the defense.
Under our law, the state and the defendant have the right to submit to the court special written charges for the jury. La.C. Cr.P. art. 807. The requested charge shall be given if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. La.C.Cr.P. art. 807. However, the trial court is not required to give the requested special charge if it is included in the general charge or in another special charge to be given. La.C.Cr.P. art. 807.
We have carefully reviewed the instructions requested by the defendant in light of the instructions actually given by the trial judge. Each of the instructions requested by the defendant was either included in the trial judge's instructions or was an incorrect statement of the law which would have required correction or further explanation. Therefore, the trial judge did not err when he refused the requested charges.

CAPITAL SENTENCE REVIEW
Every sentence of death imposed in this state is reviewed by this court to determine if it is constitutionally excessive. In making this examination, the court determines whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factors, whether the evidence supports the jury's finding of a statutory aggravating circumstance, and whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
A. Aggravating Circumstances
The jury found the existence of two aggravating circumstances: (1) the defendant was engaged in the perpetration of an armed robbery at the time of the murder. La.C.Cr.P. art. 905.4(a); and (2) the defendant had been previously convicted of an unrelated murder and had a significant prior history of criminal activity. La.C. Cr.P. art. 905.4(c).
The evidence clearly supports the jury's finding of the armed robbery aggravating factor beyond a reasonable doubt, and defendant does not contest this determination. However, defendant argues, in assignments of error numbers seven and eight, that the jury's finding of the second aggravating circumstance was tainted because the trial court erred in charging the jury that a death penalty could be returned if it found that the defendant had a "prior significant history of criminal activity" and in allowing the prosecution to base this aggravating circumstance on an armed robbery and a murder which occurred subsequent to the crime for which the defendant was standing trial.
This court has taken the position that where more than one statutory aggravating circumstance is found by the jury, the failure of one aggravating circumstance does not invalidate any other aggravating circumstance found and the sentence of death based thereon. State v. Sonnier, 402 So.2d 650 (La.1981); State v. Monroe, 397 So.2d 1258 (La.1981); But see, Note, Capital Sentencing Review Under Supreme Court Rule 28, 42 La.L.Rev. 1100, 1112 (1982). In the present case, the jury's finding that the homicide occurred during an armed robbery is fully supported by the evidence, and neither the defendant nor this court is able to find any error in the proceedings related to this determination. Consequently, under our previous decisions, it is not necessary that we consider the merit of defendant's *406 argument on the assignments of error related to the jury's findings of other aggravating circumstances.
Anticipating this conclusion, defendant contends that our action constitutes an abandonment of the appellate review function essential to a constitutional death penalty scheme, see Gregg v. Georgia 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), and calls our attention to Zant v. Stephens, 456 U.S. 410, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982), in which a similar issue was presented and the High Court certified a question to the Georgia Supreme Court to determine the premises of state law which support the conclusion that the death sentence in that case is not impaired by the invalidity of one of the statutory aggravating circumstances found by the jury.
Since defendant's brief was filed, the Georgia Supreme Court has answered the question by describing the Georgia sentencing scheme metaphorically as a pyramid in which only certain, narrowly defined, homicides requiring aggravating circumstances are crimes for which the defendant is a potential subject of the death penalty. The high court of Georgia concluded that the purpose of the statutory aggravating circumstances is to limit to a large degree the factfinder's discretion. In the situation where the factfinder finds more than one aggravating circumstance present, the failure of one of the circumstances does not serve to remove the case from those for which the perpetrator is "death eligible." Although the failure of an aggravating circumstance may at times inject an arbitrary factor into the proceedings and invalidate the death penalty imposed, the Georgia court declared that in the case before it, the failure of the one aggravating circumstance had an inconsequential impact on the jury's decision regarding the death penalty. Zant v. Stephens, 250 Ga. 97, 297 S.E.2d 1 (Ga. 1982). The United States Supreme Court has not yet rendered a further decision in the case.
A majority of this court fully considered and rejected an argument similar to defendant's based on Stephens v. Zant, 631 F.2d 397 (5th Cir.1980), in upholding a capital sentence in State v. Monroe, 397 So.2d 1258 (La.1981). See also, State v. Sonnier, 402 So.2d 650 (La.1981). At the present time, nothing has occurred which persuades a majority that our previous holdings were erroneous.
By a related assignment of error, number nine, the defendant contends that the trial court erred when it allowed the state to introduce at the sentencing hearing defendant's "Angola packet" showing defendant's previous conviction for attempted armed robbery, without requiring the state to show that the plea of guilty was made after the defendant was properly Boykinized on that charge. The "Angola packet," was introduced to show defendant's conviction of attempted armed robbery in 1973, presumably to substantiate the state's claim that the defendant has a "significant prior history of criminal activity." La.C.Cr.P. art. 905.4(c). Accordingly, since this alleged error also pertained to the second aggravating circumstance, and it is undisputed that the jury's finding of the first aggravating circumstance was error free, we pretermit consideration of defendant's argument on this assignment of error for the same reason we found it unnecessary to discuss the merits of assignments seven and eight.
Accordingly, the alleged failure of one aggravating circumstance in the present case and the possible invalidity of the evidence supporting that finding does not so taint the proceedings as to invalidate the other aggravating circumstance clearly supported by the evidence or the sentence of death imposed by the jury.
B. Proportionality of Sentence
Defendant, a black male, was twenty-eight years old at the time of the instant murder. He is thought to have a normal IQ but is functionally illiterate. He completed the fifth grade. He apparently has no skills and no significant work history.
Defendant James has amassed a very extensive juvenile and criminal record. The post-sentence investigation report lists thirty-seven juvenile incidents. Defendant was ordered confined to the Louisiana Training *407 Institute at age fourteen. In 1973, he was convicted of attempted armed robbery and sentenced to serve three years at the state penitentiary. During this period of confinement, defendant was convicted of attempted simple escape. He was released in 1975. In 1978, he was charged with aggravated rape, but the charge was later refused. Defendant was convicted of the January 23, 1979 first degree murder of Alvin Adams and was sentenced to life imprisonment. He was convicted of the January 26, 1979 armed robbery of Robert Hooten and was sentenced to ninety-nine years for this offense. Both of these recent convictions have been affirmed by this court. State v. James, 395 So.2d 1368 (La.1981); State v. James, 422 So.2d 1164 (1982).
Defendant James is the father of one child, age five, who now resides with and is totally supported by his mother.
The victim of the instant homicide was a seventy year old man.
Of all first degree murder prosecutions in Orleans Parish since 1976, nine have resulted in the death penalty. No sentence has been vacated because it was found to be disproportionate. State v. Jordan, 420 So.2d 420 (La.1982).
A comparison of the sentence in this case to sentences in other first degree murder prosecutions shows that it is not a disproportionate sentence. The instant offense was committed without provocation and in a particularly brutal manner, in that the defendant placed a gun beneath the ear of his 70 year old victim and pulled the trigger. Defendant has a history of criminal activity, even if we do not count those crimes committed subsequent to the instant offense. Defendant James has been in and out of correctional facilities since he was fourteen. The defendant did not urge any statutory mitigating factors to persuade the jury to recommend life imprisonment.
There are some cases from Orleans Parish in which the death penalty was not imposed for crimes similar to the one under consideration. However, in those cases the defendants' criminal record was not as extensive as James' or they did not commit their crimes in such a senseless, brutal fashion as the instant murder was committed.
C. Passion, Prejudice or Arbitrariness
Although the defendant is a black man and the victim was white, the record is devoid of any evidence suggesting that racial prejudice was a factor in the imposition of the death penalty. Our review of the record does not indicate that the death penalty was imposed arbitrarily or without reason or out of local passion.

DECREE
For these reasons the defendant's conviction and sentence of death are affirmed.
AFFIRMED.
LEMMON, J., concurs.
BLANCHE, J., concurs in the affirmance of the conviction and dissents from the affirmance of the sentence for reasons to be assigned.
BLANCHE, Justice (concurring in part and dissenting in part).
I concur in the majority's affirmance of the defendant's conviction, but I respectfully dissent from its refusal to set aside the death penalty and order a new capital sentence hearing.
The jury found two aggravating circumstances: (1) the defendant was engaged in the perpetration of an armed robbery, La.C. Cr.P. art. 905.4(a); and (2) the defendant was previously convicted of an unrelated murder and has a significant prior history of criminal activity. La.C.Cr.P. art. 905.4(c). While the defendant does not seriously dispute the jury's finding of the aggravating factor of armed robbery, the defendant does contest the constitutional validity of the second aggravating factor: the determination that defendant "has a significant prior history of criminal activity." La. C.Cr.P. art. 905.4(c). Defendant argues that the language of La.C.Cr.P. art. 905.4(c) is void for vagueness as it fails to set forth clear and objective standards necessary to control the jury's discretion in imposing the death penalty.
*408 It is the opinion of this writer that the defendant is correct in his contention that the phrase "significant prior history of criminal activity" is unconstitutionally vague. A criminal statute is unconstitutionally vague if its meaning is not clear to the average person. State v. Broom, (La. 1983), No. 82-KA-1717; State v. Stilley, 416 So.2d 928 (La.1982). To meet due process requirements, the language of a statute must have a generally accepted meaning sufficient to give adequate warning of the conduct proscribed and provide adequate standards to enable judges and juries to fairly administer the law. State v. Union Tank Car Co., (La.1983), No. 82-WA-1008; State v. Broom, (La.1983), No. 82-KA-1717; State v. Prestridge, 399 So. 2d 564 (La.1981). In connection with the requirement of adequate standards, the U.S. Supreme Court has held that a statute must not admit of such arbitrary and discriminatory application as to allow prosecutors, judges, and juries "to pursue their personal predilections" with regard to what conduct is or is not proscribed. Smith v. Goguen, 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974). This is particularly true for death penalty statutes where the legislature is under a constitutional mandate to provide clear and objective standards for channeling a jury's discretion so as to prevent the arbitrary and capricious imposition of the death penalty. Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Godfrey v. Georgia, 446 U.S. 420, 429, 100 S.Ct. 1759, 1765, 64 L.Ed.2d 398 (1980).
In the present case, the language of La.C. Cr.P. art. 905.4(c) which is challenged as being vague is the phrase "significant prior history of criminal activity." That language is almost identical to a phrase in Georgia's death penalty statute which was declared to be unconstitutionally vague. In the case of Arnold v. State, 236 Ga. 534, 224 S.E.2d 386 (Ga.1976), the Georgia Supreme Court was confronted with the constitutionality of Ga.Code Ann. § 27-2534.1(b)(1) which provided for the imposition of the death penalty where a "murder [is] committed by a person who has a substantial history of serious assaultive criminal convictions." In declaring that provision unconstitutionally vague, the Georgia court held that the phrase "substantial history" was "highly subjective" and failed to provide objective standards sufficient to control the jury's discretion in the imposition of the death penalty.
The Louisiana statute is subject to the same criticism. According to its common definition, a "significant history" would be one "having meaning" or "having or likely to have influence or effect: important, weighty." Webster's New Collegiate Dictionary (1977). As in the case of the Georgia statute, the above language fails to provide a jury with adequate guidance to determine what showing will satisfy the return of this aggravating factor. In fact, the phrase admits of as many different standards as there are juries considering the statute.
In addition, the term "prior" employed in La.C.Cr.P. art. 905.4(c) is not defined to indicate the relevant time frame. A "prior history" may refer to a time period before the commission of the crime in question, or to a time period before the sentencing hearing in which the state is urging La.C.Cr.P. art. 905.4(c) as an aggravating circumstance. As illustrated by the facts of the present case in which the state was allowed to present as aggravating circumstances an armed robbery and a murder which occurred subsequent to the crime for which defendant was being tried, the failure to delineate the time frame encompassed by the term "prior history" may have irreparable consequences for an accused.
Finally, the phrase "criminal activity" is also uncertain in its meaning. Does "criminal activity" refer only to criminal convictions, or does it necessarily encompass arrests as well? Does it refer only to felony offenses or does it also include misdemeanors? The term fails to provide a jury with clear guidance as to its application.
It is obvious from this review that La.C. Cr.P. art. 905.4(c) vests juries with a wide *409 latitude of discretion as to whether or not to impose the death penalty. Under Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) and its progeny, the exercise of such broad discretion by a jury in a capital case is constitutionally impermissible. Accordingly, La.C.Cr.P. art. 905.4(c) must be declared unconstitutional.
The determination that La.C.Cr.P. art. 905.4(c) is unconstitutional raises the following question: Is the death penalty invalid when it is imposed pursuant to an unconstitutional aggravating circumstance even though there are other aggravating circumstances which by themselves would be legally sufficient to permit the jury to impose the death penalty and as to which there is no uncertainty?
A majority of this court, the present writer included, has previously taken the position that where more than one statutory aggravating circumstance is found by the jury, the failure of one circumstance does not so taint the proceedings as to invalidate any other aggravating circumstance found and the sentence of death based thereon. State v. Monroe, 397 So.2d 1258 (La.1981); State v. Sonnier, 402 So.2d 650 (La.1981). Upon reconsideration of this issue and especially in light of the present factual situation, I am now convinced that the majority position is only correct so long as the failing statutory aggravating circumstance does not introduce an arbitrary factor in the jury's determination.
Under Article I, § 20 of the 1974 Louisiana Constitution and Supreme Court Rule 28, § 1(a), this court is charged with reviewing the jury's recommendation of death to determine if that recommendation was influenced by passion, prejudice, or any other arbitrary factors. Consequently, any error with respect to the jury's finding of an aggravating circumstance, especially an error of constitutional dimensions, must be scrutinized according to whether such finding introduced an element of arbitrariness and capriciousness into the jury's recommendation of death so as to render that sentence constitutionally impermissible.[1]
The principle that such an inquiry is integral to the exercise of this court's role of appellate review was recognized and advanced by a majority of this court in the case of State v. Sawyer, 422 So.2d 95 (La. 1982). In Sawyer, we expressly held that the introduction of evidence by the state at the sentencing hearing in support of an unproved aggravating circumstance requires consideration of whether such evidence introduced into the penalty proceeding an arbitrary factor which might have misdirected the jury's sentencing discretion. Such a consideration necessarily requires an initial determination by this court of whether the aggravating circumstances found by the jury are supported by the evidence and/or are constitutional. Accordingly, it was error for the majority in this case to summarily dismiss the defendant's challenge to the constitutionality of La.C.Cr.P. art. 905.4(c). Inquiry by this court as to whether all aggravating circumstances found by a jury are supported by the evidence and/or are constitutional is essential to our constitutional and statutory mandate to review a jury's recommendation to determine if the sentence was influenced by passion, prejudice, or any arbitrary factor.
In the present case, we are confronted with a situation in which one of the statutory aggravating circumstances returned by the jury must fail by reason of its unconstitutionality. As a result, we must determine whether, because of that failure, the defendant's death sentence was imposed under the influence of an arbitrary factor. More properly stated, the question becomes: Was the state's introduction of evidence of defendant's "significant prior history of criminal activity" inconsequential to the *410 jury's recommendation of the death penalty beyond a reasonable doubt?[2]
This same question was addressed by the Georgia Supreme Court in the case of Zant v. Stephens, 250 Ga. 97, 297 S.E.2d 1 (Ga. 1982). In Zant, the defendant received the death penalty after the jury found three aggravating circumstances. One of those aggravating circumstances, that the offense was committed by one having a substantial history of serious assaultive behavior, was later declared to be unconstitutionally vague. Arnold v. State, 236 Ga. 534, 224 S.E.2d 386 (Ga.1976). Nevertheless, the Georgia court held that the defendant's death sentence was not impaired by the invalidity of the aggravating circumstance. Stephens v. State, 237 Ga. 259, 227 S.E.2d 261 (Ga.1976).
The U.S. Supreme Court certified a question to the Georgia Supreme Court in an effort to discover the premises of state law which support the conclusion that the death sentence is not impaired by the invalidity of one of the statutory aggravating circumstances found by the jury. In answer to this question, the Georgia Supreme Court ruled that the constitutional invalidity of one aggravating circumstance would not bar imposition of the death penalty because the evidence upon which the jury had found the constitutionally invalid aggravating circumstance (the defendant's criminal record) had a relevance and ground for admissibility independent of the statutory aggravating circumstance upon which the jury had relied, and therefore did not inject into the penalty proceedings an arbitrary factor. The Georgia Supreme Court cautioned, however, that "[a] different result might be reached in a case where evidence was submitted in support of a statutory aggravating circumstance which was not otherwise admissible, and thereafter the circumstance failed." Zant v. Stephens, 250 Ga. 97, 297 S.E.2d 1, 4 (Ga.1982).
Adhering to the analysis employed in Zant,[3] the determination of the validity of the death penalty imposed in the present case will depend in part upon whether under the Louisiana system of capital punishment, evidence of defendant's criminal record has a relevance and ground for admissibility independent of La.C.Cr.P. art. 905.4(C). After careful review of the applicable provisions and principles, this writer is of the opinion that it does not.
Under Louisiana law, evidence of a defendant's bad character, including other crimes evidence, is properly admissible in a sentencing hearing only as it relates to constitutionally valid aggravating or mitigating circumstances, or otherwise according to the applicable rules of evidence. La.C. Cr.P. art. 905.2. In a footnote to the majority opinion in State v. Sawyer, 422 So.2d 95 (La.1982), it was suggested that the usual prohibition against the prosecution's initiation of an inquiry into defendant's character is not applicable in the penalty phase of a capital trial because the focus on character is one of the statutory means of channeling the jury's sentencing discretion. Thus, in Sawyer we concluded that evidence of a prior conviction of involuntary manslaughter was admissible in the prosecution's case-in-chief, even though the conviction did not qualify as an aggravating circumstance under La.C.Cr.P. art. 905.4(c).
I do not consider the analysis in Sawyer to be persuasive or controlling in the present case. Sawyer should not be read for the proposition that La.C.Cr.P. art. 905.2, which directs that the sentencing hearing *411 focus on the "character and propensities of the offender," permits a wide-open-no-holds barred approach to bad character evidence. La.C.Cr.P. art. 905.2 expressly provides that although the sentencing hearing shall focus on the circumstances of the offense and the character and propensities of the offender, the hearing "shall be conducted according to the rules of evidence." The prefatory statement in La.C.Cr.P. art. 905.2 that the sentencing hearing shall concentrate on the defendant's character is not equivalent to saying that all character evidence is admissible. That statement is qualified by the provisions which follow it and which serve to provide a basic guideline for the conduct of a sentencing hearing.
As explained in La.C.Cr.P. art. 905.3, Louisiana's capital sentencing scheme requires the jury to find the existence of at least one statutory aggravating circumstance beyond a reasonable doubt and to weigh it against any mitigating circumstances before a sentence of death can be returned. Accordingly, La.C.Cr.P. art. 905.2 provides that evidence relative to aggravating or mitigating circumstances shall be both relevant and admissible in the sentencing hearing, regardless of whether the defendant places his character at issue. However, by the express provisions of La.C. Cr.P. 905.2, unless it fits within the category of an aggravating or mitigating circumstance, bad character evidence, including other crimes evidence, should be admissible only "according to the rules of evidence." To interpret the language and intent of this provision otherwise would be to defeat the legislative aim to provide a carefully tailored sentencing procedure for channeling a jury's discretion in recommending the death penalty.
In this case, because the presence of the unconstitutional aggravating circumstance made it possible for the jury to consider a murder and two armed robbery convictions which might not otherwise have been before it, I cannot conclude beyond a reasonable doubt that the jury was not influenced by the presence of this evidence in its imposition of the death penalty.
Accordingly, I am of the opinion that the evidence offered in support of the unconstitutional aggravating circumstance interjected an arbitrary factor into the penalty phase of the defendant's trial which requires this court to set aside the death sentence and order a new sentencing hearing.
NOTES
[1] Justice Dennis has advanced this same argument in dissents in the following cases: State v. Monroe, 397 So.2d 1258 (La.1981); State v. Williams, 383 So.2d 369 (La.1980); State v. Sonnier, 379 So.2d 1336 (La.1979); State v. Martin, 376 So.2d 300 (La.1979). See also, Note, Capital Sentencing Review Under Supreme Court Rule 28, 42 La.L.Rev. 1100 (1982).
[2] Such a "harmless error" approach in determining whether a sentence based in part on a non-existent aggravating circumstance can be affirmed on appeal has been adopted by Georgia, Zant v. Stephens, 250 Ga. 97, 297 S.E.2d 1 (Ga.1982), and North Carolina, State v. Goodman, 298 N.C. 1, 257 S.E.2d 569 (N.C.1969), and is preferable to the approach utilized by the majority in this opinion.
[3] This writer finds the analysis utilized by the Georgia Supreme Court in a case squarely on point with the present one to be highly persuasive, especially since the Louisiana system of capital punishment is modelled in large part on the Georgia system held constitutional in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). See, Note, Capital Sentencing Review under Supreme Ct. Rule 28, 42 La.L.Rev. 1100, 1102 (1982).