## 38763. ZANT v. STEPHENS.

GREGORY, Justice.

The Supreme Court of the United States certified a question to this court following the procedure provided in our Rule 36. (Code Ann. § 24-4536.)

The case giving rise to the question is one in which the penalty of death was imposed upon appellee by a trial court in this state and affirmed on appeal. *Stephens v. State,* 237 Ga. 259 (227 SE2d 261) (1976). The question certified is: "What are the premises of state law that support the conclusion that the death sentence in this case is not impaired by the invalidity of one of the statutory aggravating circumstances found by the jury?"

The appellee was found guilty of murder. At the conclusion of the sentencing phase of the bifurcated trial, the jury recommended the death penalty and made the following special findings:

"1. The offense of murder was committed by a person with a prior record of conviction for a capital felony. The offense of murder was committed by a person who has a substantial history of serious assaultive criminal convictions.

"2. The offense of murder was committed by a person who has escaped from the lawful custody of a peace officer and place of lawful confinement."

After the date of Stephens' sentence but before the date of this court's opinion we declared void the statutory basis for the second sentence in the first of the foregoing jury findings of aggravating circumstances. *Arnold v. State,* 236 Ga. 534 (224 SE2d 386) (1976). We held the word "substantial," as it modified "history of serious assaultive criminal convictions," too vague to withstand constitutional attack. In *Stephens,* supra, this court went on to observe that the other aggravating circumstances were supported by the evidence, hence, the sentence was not impaired, just as we have held in a number of cases.

After unsuccessful efforts to obtain habeas corpus relief in the Georgia courts, *Stephens v. Hopper,* 241 Ga. 596 (247 SE2d 92) (1978), appellee commenced this habeas corpus proceeding in the United States District Court for the Middle District of Georgia. The District Court denied relief. The United States Court of Appeals, 5th Circuit (now 11th Circuit) reversed and remanded, finding the principle of Stromberg v. California, 283 U. S. 359, 367-68 (51 SC 532, 535, 75 LE 1117) (1931) controlling. The Supreme Court granted

certiorari and thereafter certified the question to this court which we now consider.

1. First, we do not find the principle of Stromberg v. California, supra, controlling. There, a California statute made it a crime to display a red flag if it was done as a symbol of any one of three distinct objectives: (a) opposition to organized government; or (b) invitation to or stimulus to anarchistic action; or (c) as aid to propaganda of a seditious character. The defendant was prosecuted under an information which alleged violations of all three grounds in a single count. The wording was in the conjunctive. However, at trial the court charged the jury that a violation of any one of the three grounds constituted an offense. The charge was in the disjunctive. The jury returned a general verdict of guilty. On appeal the first of the three grounds was held unconstitutional. This necessitated a reversal of the conviction because, even though the remaining two grounds were valid, it could not be known but what the jury relied entirely upon the single invalid ground. Had the jury verdict disclosed special findings of all three grounds a reversal of the conviction would not have occurred.

As Justice Harlan later explained in applying the Stromberg principle under circumstances where the verdict may have rested on an invalid ground or at least may have rested on an invalid ground and a valid ground which were intertwined: "There is no comparable hazard when the indictment or information is in several counts and the conviction is explicitly declared to rest on findings of guilt on certain of those counts, for in such instances there is positive evidence that the trier of fact considered each count on its own merits and separately from the others." Street v. New York, 394 U. S. 576, 588 (89 SC 1354, 22 LE2d 572) (1969). Stromberg has been applied in this manner. Bachellar v. Maryland, 397 U. S. 564 (90 SC 1312, 25 LE2d 570) (1970); Yates v. United States, 354 U. S. 298 (77 SC 1064, 1 LE2d 356) (1957).

The *Stephens* jury found the presence of two of the ten aggravating circumstances allowed by the statute, (b) (1) and (b) (9). The (b) (9) statutory aggravating circumstance was based upon the defendant's status as an escapee, one of the two grounds which the statute provides as a basis for that aggravating circumstance.[1] The (b) (1) finding was based upon both of the grounds of the statute.[2] Either

---

[1] The offense was committed by a person either (a) in lawful custody, or (b) who has escaped from lawful custody. Code Ann. § 27-2534.1 (b) (9).

[2] The offense was committed by a person (a) with a record of conviction for a capital felony, or (b) who has a substantial history of serious assaultive criminal convictions. Code Ann. § 27-2534.1 (b) (1).

ground is sufficient to support the finding of (b) (1). The subsequent failure of one of these grounds does not violate Stromberg because it is known the jury considered and found each ground on its own merits.

2. There remains, of course, the question of whether the jury's finding of an unconstitutional portion of a statutory aggravating circumstance requires reversal of the death sentence, aside from Stromberg. To express the state law premises for the conclusion that appellee's sentence was not impaired it is helpful to consider the entire body of state law governing the subject matter of homicide. That body of law may be envisioned as contained within a pyramid.

All cases of homicide of every category are contained within the pyramid. The consequences flowing to the perpetrator increase in severity as the cases proceed from the base to the apex, with the death penalty applying only to those few cases which are contained in the space just beneath the apex. To reach that category a case must pass through three planes of division between the base and apex.

The first plane of division above the base separates from all homicide cases those which fall into the category of murder. This plane is established by the legislature in statutes defining terms such as murder, voluntary manslaughter, involuntary manslaughter, and justifiable homicide. In deciding whether a given case falls above or below this plane, the function of the trier of facts is limited to finding facts. The plane remains fixed unless moved by legislative act.

The second plane separates from all murder cases those in which the penalty of death is a possible punishment. This plane is established by statutory definitions of aggravating circumstances. The function of the factfinder is again limited to making a determination of whether certain facts have been established. Except where there is treason or aircraft hijacking, a given case may not move above this second plane unless at least one statutory aggravating circumstance exists. Code Ann. § 27-2534.1 (c).

The third plane separates, from all cases in which a penalty of death may be imposed, those cases in which it shall be imposed. There is an absolute discretion in the factfinder to place any given case below the plane and not impose death. The plane itself is established by the factfinder. In establishing the plane, the factfinder considers all evidence in extenuation, mitigation and aggravation of punishment. Code Ann. § 27-2503 and § 27-2534.1. There is a final limitation on the imposition of the death penalty resting in the automatic appeal procedure: This court determines whether the penalty of death was imposed under the influence of passion,

prejudice, or any other arbitrary factor; whether the statutory aggravating circumstances are supported by the evidence; and whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases. Code Ann. § 27-2537. Performance of this function may cause this court to remove a case from the death penalty category but can never have the opposite result.

The purpose of the statutory aggravating circumstances is to limit to a large degree, but not completely, the factfinder's discretion. Unless at least one of the ten statutory aggravating circumstances exists, the death penalty may not be imposed in any event. If there exists at least one statutory aggravating circumstance, the death penalty may be imposed but the factfinder has a discretion to decline to do so without giving any reason. *Waters v. State,* 248 Ga. 355, 369 (283 SE2d 238) (1981); *Hawes v. State,* 240 Ga. 327, 334 (240 SE2d 833) (1977); *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977). In making the decision as to the penalty, the factfinder takes into consideration all circumstances before it from both the guilt-innocence and the sentence phases of the trial. These circumstances relate both to the offense and the defendant.

A case may not pass the second plane into that area in which the death penalty is authorized unless at least one statutory aggravating circumstance is found. However, this plane is passed regardless of the number of statutory aggravating circumstances found, so long as there is at least one. Once beyond this plane, the case enters the area of the factfinder's discretion, in which all the facts and circumstances of the case determine, in terms of our metaphor, whether or not the case passes the third plane and into the area in which the death penalty is imposed.

In Stephens' case, one ground of the (b) (1) statutory aggravating circumstance found by the jury failed. However, evidence of Stephens' prior record was admissible aside from any relevance it had to the invalid ground of (b) (1). Code Ann. § 27-2503.[3] It was this record and other facts which formed the basis for the jury's determination to impose the death penalty. The mere fact that some of the aggravating circumstances presented were improperly designated "statutory" had, in our opinion, an inconsequential impact on the jury's decision regarding the death penalty.

---

[3] Stephens' prior record included 5 counts of burglary, 2 counts of armed robbery, and 1 count of murder. Arguably, only the convictions for armed robbery and murder were relevant to a "substantial history of serious assaultive criminal convictions." All were admissible under Code Ann. § 27-2503 and were properly considered by the jury despite the partial invalidity of (b) (1).

A different result might be reached in a case where evidence was submitted in support of a statutory aggravating circumstance which was not otherwise admissible, and thereafter the circumstance failed. Futhermore, this court must consider each case involving a failure of one or more of a multiple of statutory aggravating circumstances to determine whether, because of the failure, the sentence was imposed under the influence of an arbitrary factor. Code Ann. § 27-2537 (c) (1). In Stephens' case the failure did not have that effect.

*The certified question answered as provided herein. All the Justices concur.*

DECIDED OCTOBER 27, 1982.

*Michael J. Bowers, Attorney General, Daryl A. Robinson, William B. Hill, Jr., Assistant Attorneys General,* for appellant.

*James C. Bonner, Anthony G. Amsterdam, John Charles Boger,* for appellee.

*William A. Allain, Attorney General (Mississippi), Michael T. Greely, Attorney General (Montana), Paul L. Douglas, Attorney General (Nebraska), Richard H. Bryan, Attorney General (Nevada), Jeff Bingaman, Attorney General (New Mexico), William J. Guste, Jr., Attorney General (Louisiana), John Ashcroft, Attorney General (Missouri), Daniel J. Popeo, Paul D. Kamenar, Nicholas E. Calio,* amici curiae.