## S00A0061. THARPE v. HEAD.
### (533 SE2d 368)

FLETCHER, Presiding Justice.

The issue in this case is whether Tharpe's habeas corpus petition challenging his habitual violator conviction alleged adverse collateral consequences to sustain his claim. We hold that Tharpe suffers adverse collateral consequences as a result of his habitual violator conviction because the State introduced that conviction as non-statutory evidence in his death penalty trial. Therefore, the habeas court erred in dismissing his petition as moot and we reverse and remand for a decision on the merits.

Keith Leroy Tharpe pled guilty in 1988 to being a habitual traffic violator and he was sentenced to 4.5 years of probation.[1] In 1991, a jury convicted him of malice murder and two counts of kidnapping with bodily injury. In the penalty phase of his murder trial, the State introduced a certified copy of his habitual violator conviction as non-statutory aggravating evidence.[2] The jury returned a death sentence and this Court affirmed the convictions and sentence.[3] Tharpe subsequently filed a petition for writ of habeas corpus challenging his murder and kidnapping convictions and the resulting death sentence. In 1998, Tharpe also filed a habeas corpus petition, the subject of this appeal, challenging his conviction as a habitual violator, although his sentence had expired years earlier. He contends that his rights were substantially denied during the plea colloquy that led to his conviction for that offense. In 1999, the habeas court dismissed as moot the petition challenging the habitual violator conviction because Tharpe "has failed to demonstrate that he is suffering adverse collateral consequences or significant restraints on his liberty beyond that flowing from other sentences as a result of the [habitual violator] conviction." Tharpe claims that he is suffering adverse collateral consequences from his habitual violator conviction because it was used to support the jury's decision to impose the death sentence for his later crimes.

We granted Tharpe's certificate of probable cause to appeal and posed the following question:

---

[1] See OCGA § 40-5-58.

[2] See *Wilson v. State*, 271 Ga. 811 (20) (525 SE2d 339) (1999) (a defendant's previous criminal activity is generally admissible in the penalty phase as non-statutory aggravating evidence).

[3] *Tharpe v. State*, 262 Ga. 110 (416 SE2d 78) (1992).

Whether the habeas court erred by dismissing the petitioner's application for writ of habeas corpus as moot on the ground that the petitioner had failed to prove that he was suffering any adverse collateral consequences from his 1988 habitual violator conviction.

"Any person restrained of his liberty as a result of a sentence imposed by any state court of record may seek a writ of habeas corpus to inquire into the legality of the restraint."[4] Present confinement is not required to show a restraint of liberty; it is sufficient restraint that the petitioner is suffering adverse collateral consequences flowing from his conviction.[5] Adverse collateral consequences can be found through recidivist statutes, parole consequences, and even "the stigma and burden of an invalid sentence."[6] The adverse collateral consequences may continue past the completion of any sentence resulting from the allegedly invalid conviction if the petitioner has "a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him."[7] "The mere fact that the state sentence has been completely served should no longer be a bar to attacking it through habeas corpus even though the petition is not initially filed until after the sentence is completed."[8]

In *Zant v. Cook*,[9] Cook filed a habeas corpus petition challenging a 1950 murder conviction that was used to prove a statutory aggravating circumstance in his 1985 death penalty trial for another murder.[10] Cook's sentence for the 1950 murder conviction had long since expired: he had been released from prison in 1957 and his civil rights had been restored in 1965.[11] At his 1985 murder trial, the jury found two statutory aggravating circumstances beyond a reasonable doubt in support of his death sentence, only one of which was based on the 1950 murder conviction. Although a jury needs to find only one statutory aggravating circumstance in the penalty phase before it may impose the death penalty,[12] this Court nonetheless affirmed the habeas court's finding that Cook was suffering adverse collateral consequences stemming from his 1950 murder conviction.[13]

---

[4] OCGA § 9-14-1 (c).

[5] See *Atkins v. Hopper*, 234 Ga. 330 (2) (216 SE2d 89) (1975).

[6] *Atkins*, 234 Ga. at 333; *Hardison v. Martin*, 254 Ga. 719 (1) (334 SE2d 161) (1985).

[7] *Carafas v. LaVallee*, 391 U. S. 234, 237 (88 SC 1556, 20 LE2d 554) (1968); *Hardison*, 254 Ga. at 721.

[8] *Parris v. State*, 232 Ga. 687, 690 (208 SE2d 493) (1974); *Hardison*, 254 Ga. at 721.

[9] 259 Ga. 299 (379 SE2d 780) (1989).

[10] See OCGA § 17-10-30 (b) (1).

[11] *Cook*, 259 Ga. at 299.

[12] See OCGA § 17-10-30 (c); *Zant v. Stephens*, 250 Ga. 97 (2) (297 SE2d 1) (1982).

[13] See *Cook*, 259 Ga. at 300.

The warden argues that Tharpe had failed to allege adverse collateral consequences to sustain the petition because the habitual violator conviction was only used as non-statutory aggravating evidence in his death penalty trial. We reject the warden's contention that a conviction introduced as non-statutory aggravating evidence differs from a conviction introduced to form the basis of a statutory aggravating circumstance because a statutory aggravating circumstance must be found before the jury can impose a death sentence.[14] We decline to make such a distinction because, even if the State proves one or more statutory aggravating circumstances, the jury is always free to exercise its discretion to impose a life sentence.[15] Evidence introduced by the State in the penalty phase, whether it is offered to prove a statutory aggravating circumstance or whether it is non-statutory aggravating evidence such as a defendant's character or criminal history, is intended to influence the trier of fact to impose a death sentence. At Tharpe's death penalty trial, the State obviously believed that the habitual violator conviction would help convince the jury to recommend a death sentence, or it would not have introduced it.[16] Therefore, since the 1988 habitual violator conviction was used to sway the jury to impose the death sentence he is under, Tharpe is currently suffering adverse collateral consequences from the habitual violator conviction and his petition is not moot.[17]

*Judgment reversed and case remanded. Benham, C. J., Fletcher, P. J., Sears, Hunstein and Hines, JJ., and Judge Cynthia D. Wright concur. Carley, J., dissents. Thompson, J., disqualified.*

CARLEY, Justice, dissenting.

In 1988, Tharpe entered a guilty plea to a habitual violator traffic charge, for which he received and eventually served a probated sentence. In 1991, Tharpe was sentenced to death for his commission of a malice murder and, on his direct appeal, this Court affirmed. *Tharpe v. State*, 262 Ga. 110 (416 SE2d 78) (1992). In the sentencing phase of that capital case, the State introduced evidence of Tharpe's habitual violator status as a non-statutory aggravating circumstance. In this habeas proceeding, Tharpe sought to challenge his conviction for that traffic offense despite its apparent mootness, urging that its use as evidence in his murder trial constitutes an adverse collateral consequence sufficient to permit him to attack its validity even after serving the probated sentence. See *Zant v. Cook*, 259 Ga.

---

[14] OCGA § 17-10-30 (c).

[15] *Zant v. Stephens*, 250 Ga. at 100.

[16] See *Cook*, 259 Ga. at 300 ("[T]he state's argument that the 1950 conviction is too old to be attacked, but not too old to be used to enhance Cook's sentence for his 1985 conviction of murder is without merit.").

[17] See *Cook*, 259 Ga. at 300.

299, 300 (1) (379 SE2d 780) (1989); *Parris v. State*, 232 Ga. 687 (208 SE2d 493) (1974). The habeas court dismissed Tharpe's petition as moot, but this Court now reverses. Although I do not agree with the reasoning of the habeas court, I nevertheless believe that the habeas court properly dismissed the petition because Tharpe cannot demonstrate, under established legal principles applicable here, that the traffic conviction has resulted in adverse consequences collateral to the sentence he has already served for that offense. In my opinion, therefore, the habeas court's order of dismissal should be affirmed pursuant to the "right for any reason" principle.

Habeas corpus is a collateral civil remedy, and "is not intended to be a means for re-litigating a prisoner's case. [Cits.]" *Gibson v. Turpin*, 270 Ga. 855, 857 (1) (513 SE2d 186) (1999). Therefore, issues which were raised and decided on the direct appeal of Tharpe's conviction and sentence cannot be reasserted in a subsequent habeas proceeding. *Gibson v. Turpin*, supra at 857 (1); *Turpin v. Mobley*, 269 Ga. 635, 636 (1) (502 SE2d 458) (1998); *Turpin v. Christenson*, 269 Ga. 226, 227 (1) (497 SE2d 216) (1998). The admission of Tharpe's habitual violator conviction into evidence was raised *and* addressed in the direct appeal of his murder conviction. Compare *Zant v. Cook*, supra (habeas permitted where no direct appeal was ever taken).

> As Tharpe did not object on constitutional grounds to the introduction into evidence at the sentencing phase of a prior conviction based on a guilty plea (for violating the habitual offender law), any claim that the guilty plea was not entered knowingly, voluntarily and intelligently is waived. [Cit.]

*Tharpe v. State*, supra at 113 (8). This is a binding determination of procedural default which cannot be relitigated in a habeas proceeding. *Roulain v. Martin*, 266 Ga. 353 (1) (466 SE2d 837) (1996). A procedural bar can be overcome only by showing cause and prejudice or, in the alternative, a miscarriage of justice. *White v. Kelso*, 261 Ga. 32, 33 (401 SE2d 733) (1991).

However, this Court did not decide this particular claim only on the principle of waiver, but went further. "The admission of this plea would not rise to the level of harmful error under the circumstances surrounding it." *Tharpe v. State*, supra at 113 (8). Thus, we have already made a binding determination that the introduction of Tharpe's guilty plea into evidence had no effect on the jury's decision as to Tharpe's sentence. See generally *Godfrey v. Francis*, 251 Ga. 652, 654 (2) (308 SE2d 806) (1983); *Stephens v. Balkcom*, 245 Ga. 492 (2) (265 SE2d 596) (1980). " '(O)ne who had an issue decided adversely to him on direct appeal is precluded from relitigating that issue on habeas corpus, (cit.). . . .' [Cit.]" *Roulain v. Martin*, supra at

353-354 (1). Because it was based upon the merits, this Court's pronouncement that the traffic conviction had no prejudicial impact with regard to the imposition of the death sentence is res judicata and cannot be overcome.

Thus, in the context of a habeas proceeding challenging his death sentence, the principle of res judicata would preclude Tharpe from reasserting the introduction of the harmless evidence of the habitual violator conviction as a ground for relief. The only question presented for decision here is whether he can do the converse, and urge that his death sentence is an adverse consequence of the habitual violator conviction authorizing consideration of his habeas petition challenging that moot conviction.

If the introduction of the conviction for the traffic offense had no direct adverse consequence which might have contributed to the imposition of the death sentence, Tharpe cannot urge that the same sentence can be considered to be a collateral adverse circumstance in this proceeding. In fact, because this Court has determined previously that the sentence was *not* affected by the introduction of evidence of the traffic offense, it is not an adverse consequence for *any* post-conviction purposes instituted by Tharpe.

> "It is a fundamental principle of jurisprudence, arising from the very nature of courts of justice and the objects for which they are established, that a question of fact or of law distinctly put in issue and directly determined by a court of competent jurisdiction cannot afterwards be disputed between the same parties[.] . . . The principle is as applicable to the decisions of criminal courts as to those of civil jurisdiction." [Cit.]

*Hall v. Scoggins*, 202 Ga. 198, 201 (42 SE2d 763) (1947). Since Tharpe cannot contend that his traffic conviction had a negative impact on the return of the death sentence, he does not have " ' "a substantial stake in [that] judgment of conviction which survives the satisfaction of the sentence imposed on him." ' [Cit.]" *Hardison v. Martin*, 254 Ga. 719, 721 (1) (334 SE2d 161) (1985). Tharpe has nothing to gain in this proceeding, since in no event will a reversal of the traffic conviction mandate a reversal of the death sentence.

If, in this civil action, Tharpe is permitted to rely upon his death sentence as an adverse consequence of the introduction of his traffic offense, then he is, in effect, doing here what he could not do in a habeas challenge to that sentence. That violates the "general rule that one cannot do indirectly that which the law does not allow to be done directly." *Richmond County v. McElmurray*, 223 Ga. 440, 443 (1) (156 SE2d 53) (1967). Because the Court today sanctions this anoma-

lous result, I dissent.

DECIDED JULY 10, 2000.

*Thomas H. Dunn*, for appellant.
*Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Paige R. Whitaker, Assistant Attorney General*, for appellee.