NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: June 11, 2024

S23A0524. HOSTETLER v. THE STATE et al.

COLVIN, Justice.

Appellant Rachel Hostetler was convicted of one misdemeanor count of driving under the influence of alcohol ("DUI") in violation of OCGA § 40-6-391 (a).[1] During the pendency of her probation,

---

[1] Appellant was involved in a single-vehicle collision that occurred on April 15, 2017. On June 21, 2017, she was charged with one count of driving under the influence under OCGA § 40-6-391 (a) by formal accusation in Floyd County. Following a six-person jury trial from October 11 to October 12, 2017, Appellant was convicted of one count of DUI. On October 12, 2017, she was sentenced to 12 months in prison with 48 hours to serve, but her sentence was suspended pending her appeal. Appellant filed a motion for new trial on October 13, 2017, which she amended on February 8, 2018. The trial court denied Appellant's motion, as amended, on June 12, 2018, and Appellant appealed to the Court of Appeals on July 5, 2018. The Court of Appeals affirmed in an unpublished decision on June 25, 2019, but following Appellant's unsuccessful motion for reconsideration, it issued an unpublished substitute opinion on July 16, 2019. Appellant then filed a petition for writ of certiorari with this Court on August 5, 2019. Prior to our decision on Appellant's petition for certiorari, Appellant retained new counsel, who filed an extraordinary motion for new trial with the trial court on November 5, 2019, notwithstanding that remittitur had not yet issued. Following our denial of Appellant's petition for certiorari by unpublished order on March 26, 2020, and

Appellant filed a petition for a writ of habeas corpus alleging that her former counsel, who had represented her both at trial and on appeal, was constitutionally ineffective under both the United States Constitution and the Georgia Constitution. Before the habeas court ruled on her petition, however, Appellant completed her sentence, and the habeas court dismissed her petition as moot.

We granted Appellant's application for a certificate of probable cause to appeal the dismissal of her petition to determine whether she continues to suffer from adverse collateral consequences of her challenged conviction, notwithstanding the completion of her sentence. Specifically, we asked the parties to address whether

remittitur to the trial court, Appellant filed a renewed and amended extraordinary motion for new trial on July 16, 2020, which the trial court dismissed on July 28, 2020.

On August 1, 2020, Appellant began to serve her sentence. On November 2, 2020, Appellant filed a petition for a writ of habeas corpus in Floyd County Superior Court. Notwithstanding the completion of her probation on July 31, 2021, Appellant amended her petition on September 20, 2021, and filed a brief in support on September 24, 2021. Following an evidentiary hearing on September 24, 2021, the habeas court dismissed Appellant's amended petition as moot on December 16, 2022. On January 17, 2023, Appellant applied to this Court for a certificate of probable cause to appeal the dismissal of her habeas petition, which this Court granted on November 3, 2023. The matter was docketed to the term of this Court beginning in December 2023 and submitted on the briefs.

Appellant's potential to receive an enhanced recidivist sentence for a subsequent DUI conviction constituted such a consequence. We also asked the parties to consider whether Appellant "has demonstrated and must demonstrate" this consequence "in the record." The answers to these questions determine whether Appellant remains "restrained of h[er] liberty" within the meaning of OCGA § 9-14-1 (c), and accordingly whether her petition is moot. After careful consideration, we conclude that Appellant's petition is not moot, as explained below. We accordingly vacate the order of the habeas court and remand for further proceedings consistent with this opinion.

1. Following a two-day jury trial, Appellant was convicted of DUI and sentenced to 12 months in prison with 48 hours to serve.[2]

---

[2] Appellant's sentence also included a $600 fine. As conditions of her probation, Appellant was required to waive certain of her rights under the Fourth Amendment to the United States Constitution; to avoid consumption of alcoholic beverages and narcotics or dangerous drugs unless lawfully prescribed; to avoid association with persons that consume alcohol or illegal drugs and places where alcohol or illegal drugs are present; to perform 40 hours of community service; and to pay probation fees. Appellant's driver's license was also suspended by operation of law under OCGA § 40-5-63 (a) (1) for a term of 12 months but was reinstated after approximately four months,

Appellant began serving her sentence on August 1, 2020, and on November 2, 2020, while still on probation, she filed a petition for a writ of habeas corpus.

In her petition, Appellant argued that her potential to receive a recidivist sentence under Georgia's DUI statute, see OCGA § 40-6-391 (c) (2), constituted an adverse collateral consequence of her conviction. Before the habeas court ruled on her petition, however, Appellant completed her probation on July 31, 2021. Appellant subsequently amended her petition to emphasize that she continued to suffer collateral consequences of her conviction, even after the completion of her sentence.

The habeas court held an evidentiary hearing on Appellant's amended petition, during which Appellant testified regarding the collateral consequences of her conviction, and Appellant's counsel argued that Appellant's potential to receive a recidivist sentence prevented her petition from being rendered moot. Notwithstanding

following Appellant's completion of a DUI Alcohol Risk Reduction Program and her payment of the associated restoration fee.

this testimony and argument, the habeas court dismissed her petition as moot on December 16, 2022. In its order, the court considered some of the alleged adverse consequences of Appellant's conviction,[3] but it did not specifically rule on whether Appellant's potential to receive a recidivist sentence constituted a restraint on her liberty within the meaning of OCGA § 9-14-1 (c).

2. (a) OCGA § 9-14-1 (c) provides that "[a]ny person restrained of his liberty as a result of a sentence imposed by any state court of record may seek a writ of habeas corpus to inquire into the legality of the restraint." With respect to felony convictions, we have held that a convicted person may remain "restrained of his liberty," even

---

[3] Appellant testified that as a result of her conviction, she had difficulty finding employment in her chosen profession, suffered anxiety and incurred costs related to treatment, incurred travel costs during the suspension of her license, and was subsequently required to procure different automotive insurance at a much higher monthly rate, which, along with various fines and fees she was required to pay, depleted her "nest egg." Appellant has also asked us to reverse the habeas court's conclusion that these alleged consequences "d[id] not amount to restraints on [her] liberty" within the meaning of OCGA § 9-14-1 (c). Because we hold that Appellant's petition was not moot based on her potential to receive a recidivist sentence, we decline to reach these issues, and we make no decision regarding whether Appellant's $600 fine, which may be returned to her if her conviction is invalidated, prevents her claim from being moot.

after his period of incarceration is complete if he continues to suffer from adverse collateral consequences of his conviction. See *Tharpe v. Head*, 272 Ga. 596, 597 (533 SE2d 368) (2000) ("Present confinement is not required to show a restraint of liberty; it is sufficient restraint that the petitioner is suffering adverse collateral consequences flowing from his conviction. . . . The adverse collateral consequences may continue past the completion of any sentence resulting from the allegedly invalid conviction[.]"). The same principle applies to misdemeanor convictions. See *Turner v. State*, 284 Ga. 494, 495 (1) (668 SE2d 692) (2008) (explaining in a misdemeanor case that "the fact that a state sentence has been completely served is not a bar to attacking it through habeas corpus even though the petition is not initially filed until after the sentence is completed"), overruled on other grounds by *Nazario v. State*, 293 Ga. 480, 489 (2) (d) (746 SE2d 109) (2013). So long as a person continues to suffer adverse consequences of his conviction, as explained below, his habeas petition is not moot. See *Tharpe*, 272 Ga. at 598 (holding that because the defendant "is currently

6

suffering adverse collateral consequences from [his] conviction[,] . . . his petition is not moot). See also *Parris v. State*, 232 Ga. 687, 690 (208 SE2d 493) (1974) (explaining that the "concepts of restraints on liberty and of non-mootness merge at the point where we consider collateral consequences of an allegedly void conviction even though the sentence be completely served").

A lingering adverse collateral consequence of a conviction exists where the petitioner "has a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him." *Hardison v. Martin*, 254 Ga. 719, 721 (1) (334 SE2d 161) (1985) (quoting *Carafas v. LaVallee*, 391 U.S. 234, 237 (88 SCt 1556, 20 LE2d 554) (1968) (citation and punctuation omitted)). This "substantial stake" can take many forms. A person convicted of a felony may be barred by statute from participating in certain professions or from serving as a juror. See *Parris*, 232 Ga. at 690 (quoting *Carafas*, 391 U.S. at 237). Importantly, we have recognized that "[a]dverse collateral consequences can be found through *recidivist statutes*, parole consequences, and difficulties in

reassociation with a free society after release from prison." *Atkins v. Hopper*, 234 Ga. 330, 332 (2) (216 SE2d 89) (1975) (emphasis supplied). See also *Tharpe*, 272 Ga. at 597 (quoting *Atkins*, 234 Ga. at 332). These consequences may even include "the stigma and burden of an invalid sentence." *Tharpe*, 272 Ga. at 597.

The adverse collateral consequences of felony convictions are so well recognized that we now simply presume they exist. See *Atkins*, 234 Ga. at 333 (2) ("To require a petitioner to allege adverse collateral consequences of a felony conviction is in effect requiring him to do a useless act."); *Turner*, 284 Ga. at 497 (1) (explaining that in *Atkins*, "[t]his Court determined that it was unnecessary to require a habeas petitioner to allege adverse collateral consequences of a *felony* conviction"); *Abebe v. State*, 304 Ga. 614, 615 (820 SE2d 678) (2018) (citing *Atkins* for the proposition that it is "unnecessary for [a] habeas petitioner to allege adverse collateral consequences of a felony conviction").

We do not apply this same presumption to misdemeanor convictions, however, and instead require petitioners to allege and

8

demonstrate the adverse consequences of their convictions. See *Turner*, 284 Ga. at 497 (1) (declining to extend the presumption of adverse collateral consequences to a person convicted of a misdemeanor); *Abebe*, 304 Ga. at 615 ("A habeas petitioner who has completely served her misdemeanor sentence must demonstrate that she is suffering adverse collateral consequences flowing from her conviction." (citation and punctuation omitted)).[4] In a line of cases going back to the late 1970s, we have required allegations of adverse collateral consequences to be demonstrated in the record. See *Hart v. Burford*, 304 Ga. 818, 818-819 (822 SE2d 237) (2018); *Abebe*, 304 Ga. at 615; *Turner*, 284 Ga. at 496 (1); *In re I.S.*, 278 Ga. 859, 862 (607 SE2d 546) (2005); *Baker v. State*, 240 Ga. 431, 431 (241 SE2d 187) (1978), disapproved on other grounds by *Abebe*, 304 Ga. at 615 n.2.

(b) Appellant argues that as a result of her allegedly invalid

---

[4] Though we declined in *Turner* to extend the presumption of collateral consequences arising from felony convictions to misdemeanor convictions, we never explained why. See *Turner*, 284 Ga. at 497 (1). Appellant now asks us to overturn *Turner*, but we decline to do so here because we can resolve Appellant's claim without evaluating the reasoning of that case.

conviction, she will be subject to an enhanced recidivist sentence if she is convicted of a second DUI, and that this potential consequence constitutes a restraint on her liberty which prevents her petition from being moot. See OCGA § 40-6-391 (c) (2) (prescribing an enhanced sentence for a second DUI conviction). For the reasons that follow, we agree.

We have previously recognized that a habeas petitioner can challenge a prior conviction when the prior conviction was used to enhance the petitioner's sentence for a subsequent conviction. See *Parris*, 232 Ga. at 689-690 (holding that the petitioner's challenge to his felony conviction was not moot even though he had completed his sentence, where the petitioner was serving a separate, subsequent sentence that had been enhanced due to the prior conviction). See also *Tharpe*, 272 Ga. at 598 (holding that the petitioner's challenge to his habitual traffic violator conviction was not moot, notwithstanding the completion of his sentence, because that conviction had been used against him in the penalty phase of a subsequent death-penalty murder trial). In such cases, the sentence

enhancement is a clear "adverse collateral consequence[ ]" of the prior conviction, and so a habeas petition challenging the prior conviction is "not moot." Id.

We have also recognized that the consequences of a felony conviction can include potential *future* enhanced sentences. In *Atkins*, we held that a petitioner's conviction and sentence for armed robbery constituted a distinct restraint on his liberty, even though he was serving a concurrent life sentence for murder. *Atkins*, 234 Ga. at 332 (2). We further held that we could presume the adverse collateral consequences of a felony conviction, which can include "recidivist statutes, parole consequences, and difficulties in reassociation with a free society after release from prison." Id.[5] See

---

[5] Though decisions of the United States Supreme Court are not binding on us on matters of mootness under Georgia law, we note that it engaged in similar reasoning in *Rutledge v. United States*, 517 U.S. 292 (116 SCt 1241, 134 LE2d 419) (1996). See *Rutledge*, 517 U.S. at 302 (III) ("The separate *conviction*, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense."). See also *McAlister v. Clifton*, 313 Ga. 737, 745 (873 SE2d 178) (2022) (Peterson, J., concurring) (noting that we have never explored a Georgia-specific basis for our mootness doctrine).

also *In the Interest of M. F.*, 305 Ga. 820, 821-822 (828 SE2d 350) (2019) (holding that courts may presume that adverse collateral consequences arise from an adjudication of delinquency because such an adjudication could affect the juvenile in future juvenile or criminal proceedings, including sentencing for a future crime). Though not expressly stated by the *Atkins* Court, each of the adverse collateral consequences it identified had the potential to affect the petitioner in the future: he could commit a subsequent crime and receive an enhanced recidivist sentence; his armed robbery conviction could be used against him in a parole hearing for his felony murder conviction; or, if paroled, his separate armed robbery conviction could pose further legal difficulties when reintegrating with society. And because the petitioner's armed robbery conviction was a "restraint" on his liberty in these ways, among others, we allowed his habeas challenge to that conviction to proceed before any of these potential future consequences were realized. *Atkins*, 234 Ga. at 332-333 (2).

The principles relied on in *Atkins* apply to the misdemeanor

context as well. Perhaps ironically, because a misdemeanor sentence is often shorter than the time it takes a court to adjudicate a habeas proceeding, a habeas petitioner challenging a misdemeanor conviction will frequently have completed her sentence and be suffering *only* collateral consequences by the time the petition is before the court. See e.g., OCGA § 40-6-391 (c) (1)-(3) (prescribing a 12-month maximum sentence for a first, second, or third DUI within the applicable time period).

This brings us to Appellant's case. She filed her habeas action on November 2, 2020, but it was not decided by the habeas court until December 16, 2022 — 774 days later. Appellant had finished serving her sentence by then. But we have no trouble concluding that she still suffered adverse legal collateral consequences of her conviction: among other things, her DUI conviction could be used to enhance her sentence on a future conviction.[6] This possibility is

---

[6] Appellant has argued, and we agree, that the potential of the State to use Appellant's challenged conviction as substantive evidence against her in a future DUI trial also constitutes a lingering adverse consequence of her conviction. See OCGA § 24-4-417 (a) ("In a criminal proceeding involving a

enough to put a restraint on Appellant's liberty, such that her petition is not moot.[7] See *Tharpe*, 272 Ga. at 598; *Atkins*, 234 Ga. at 332-333 (2). In sum, we hold that an appellant's potential to receive a recidivist sentence under Georgia law for a subsequent conviction as a result of a challenged misdemeanor conviction is an adverse collateral consequence of that conviction and thus a restraint on the appellant's liberty within the meaning of OCGA § 9-14-1 (c).

(c) As a result of our holding in Division (2) (b), we must

---

prosecution for a violation of [OCGA §] 40-6-391, evidence of the commission of another violation of [OCGA §] 40-6-391 on a different occasion by the same accused shall be admissible [under certain conditions].").

[7] Though we are not bound by the United States Supreme Court on questions of mootness under Georgia law, we note that it has engaged in similar reasoning when considering direct appeals to misdemeanor convictions. In *Sibron v. New York*, 392 U.S. 40 (88 SCt 1889, 20 LE2d 917) (1968), the Supreme Court held that a litigant's direct appeal was not moot under the case-or-controversy requirement of the United States Constitution even though the appellant had completed his misdemeanor sentence. Cf. *Sibron*, 392 U.S. at 58 (I). The *Sibron* Court stated that "a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." Id. at 57 (I). We need not go so far today, but like the *Sibron* Court, we are concerned that a holding contrary to the one we have adopted here would preclude review of "'minor' offenses which carry only short sentences." Id. at 52 (I). As the *Sibron* Court aptly put it, "a [s]tate may not effectively deny a convict access to its appellate courts until he has been released and then argue that his case has been mooted by his failure to do what it alone prevented him from doing." Id. at 53 (I).

14

consider whether Appellant has demonstrated and must demonstrate her potential to receive a recidivist sentence "in the record" as we have stated in past misdemeanor cases. See, e.g., *Abebe*, 304 Ga. at 615. After consideration of this issue, we reiterate that petitioners must demonstrate this potential in the record, see id., and hold that they may accomplish this requirement by identifying an applicable Georgia sentencing statute in their written filings or in the argument portion of a hearing before the habeas court.

This holding is dictated by our holding above. If we were to require misdemeanants to produce certified copies of charging documents or of an enhanced sentence in a subsequent case, we would undermine the reasons for holding that the *potential* to receive a recidivist sentence constitutes an adverse consequence in the first instance. See Division 2 (b), supra. Requiring petitioners to wait for a subsequent offense to be charged may lead to their habeas claims avoiding review until an enhanced sentence has been received and served. And nothing in our previous cases requires a

contrary result; a review of these cases reveals petitioners who either failed to allege collateral consequences in the first instance or petitioners who failed to support allegations of collateral consequences with any evidence whatsoever and whose cases were determined to be moot on that basis. See *Hart*, 304 Ga. at 819-820 (holding that the appellant had failed to demonstrate adverse consequences of his misdemeanor conviction "in the record" where the appellant alleged at oral argument before this court that his sentence remained incomplete because he had not yet paid a particular fine, but the State averred that the appellant's sentence had been completed in full, and there was no evidence in the record that the fine remained outstanding); *Abebe*, 304 Ga. at 615 (holding that the appellant's case was moot because she had failed to allege any collateral consequences of her misdemeanor DUI conviction); *Turner*, 284 Ga. at 496 (1) (holding that the appellant failed to demonstrate adverse collateral consequences where the appellant failed to provide any evidentiary support for his argument that his difficulty in finding employment was a result of his challenged

16

convictions); *Baker*, 240 Ga. at 431 (holding without discussion that the appellant had not shown adverse collateral consequences on the record).

(d) Under the holdings above, Appellant's case is not moot. Appellant argued that she suffered the potential to receive an enhanced recidivist sentence under Georgia's DUI laws in her original petition for a writ of habeas corpus. She reiterated this claim in her amended petition and argued it before the habeas court. Because Appellant made this allegation and supported it by identifying particular Georgia statutes, she has demonstrated an adverse consequence in the record, and this consequence is a restraint on her liberty that prevents her case from being moot. We therefore vacate the order of the habeas court and remand Appellant's case for further proceedings consistent with this opinion.

*Judgment vacated and case remanded. All the Justices concur, except McMillian, J., disqualified.*